**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GLENN PERKINS,** | : | **Civil No. 1:25-CV-1321** |
| | : | |
| **Plaintiff** | : | |
| | : | |
| **v.** | : | **(Magistrate Judge Carlson)** |
| | : | |
| **FRANK BISIGNANO, Commissioner of Social Security,** | : | |
| | : | |
| **Defendant.** | : | |

**<u>MEMORANDUM OPINION</u>**

## I. <u>Introduction</u>

While Socal Security appeals are judged under a deferential standard of review, one fundamental tenet guides us in this field: A complete failure by an Administrative Law Judge (ALJ) to analyze, address or even acknowledge material evidence compels a remand.

So it is here.

The plaintiff, Glenn Perkins, is a man in his thirties, with a limited education, who has experienced homelessness, and suffers from an array of medically determinable impairments. The ALJ who considered his case concluded that Perkins suffered from two severe impairments, osteoarthritis of the bilateral knees and peripheral neuropathy. (Tr. 20). These two impairments identified by the ALJ

significantly limited his ability to perform any work, according to the ALJ who found, based upon these medical conditions, that Perkins was only capable of performing less than a full range of sedentary work. (Tr. 20-21).

What is remarkable about this decision is not what it says, but rather what it neglects to address. The ALJ's decision completely ignores three other medical impairments and limitations which are material to any disability analysis. First, as argued by the plaintiff, the ALJ's decision is totally devoid of any recognition that Perkins suffers from epilepsy and depression, two longstanding medical diagnoses that are set forth in the clinical record.

Additionally, the ALJ's ruling denying this disability claim fails to consider one other significant physical limitation that is thoroughly documented in Perkins' treatment notes. Those clinical notes observe that Perkins needed a cane to ambulate. Yet, the ALJ's decision makes no mention whatsoever of this fact; fails to consider the medical necessity of this cane; and provides no reasoned analysis regarding how the use of a cane may erode Perkins' ability to perform even the limited range of sedentary work identified by the ALJ.

The failure to address, analyze or even acknowledge these impairments is particularly puzzling since the relatively modest medical record is replete with references to Perkins' epilepsy, depression and need to use a cane. Given the ALJ's

total failure to recognize or address these material issues, we are left at sea in this case when trying to ascertain whether substantial evidence supports this disability determination. Simply put, when an ALJ ignores material evidence it cannot be said that substantial evidence supports the ALJ's decision. In this case, the ALJ has failed to acknowledge material facts, and we cannot discern whether the ALJ discounted this evidence for a good reason, a bad reason or no reason at all. Since the ALJ's analysis in this case does not in any way address this material evidence, we will remand this case for further consideration by the Commissioner.

## II. Statement of Facts and of the Case

### A. Background

On July 1, 2023, Glenn Perkins filed applications disability and disability insurance benefits as well as supplemental security income pursuant to Titles II and XVI of the Social Security Act. (Tr. 17). In both applications, Perkins alleged disability beginning May 24, 2023. (Id.) Perkins was born on March 5, 1986, and was thirty-seven years old on the alleged disability onset date, making him a younger worker under the Commissioner's regulations. (Tr. 23). He had a limited education and a prior work history involving heavy labor. (Id.)

The ALJ's decision in this case found that Perkins suffered from two severe impairments, osteoarthritis of the bilateral knees and peripheral neuropathy. (Tr.

20). According to the ALJ, these two medical conditions confined Perkins to less than a full range of sedentary work. (Tr. 20-21).

**B. Perkins' Unacknowledged Medical Impairments and Limitations**

There are, however, at least three other significant, medically determinable conditions and limitations which are never mentioned by the ALJ in the analysis of this disability claim. First, as the plaintiff notes on appeal, Perkins' treatment notes indicate that he has long suffered from epilepsy. In addition, these treatment notes diagnose Perkins as experiencing chronic depression. Indeed, the clinical record, while modest, is replete with references to these two diagnoses. For example, Perkins' epilepsy is noted more than fifty times in the clinical record.[1] In fact, both of the state agency experts who assessed Perkins' case specifically identified epilepsy as one of his medical diagnoses. (Tr. 79, 80, 87, 88, 93, 96, 97, 103, 106, 107). Likewise, Perkins' treatment notes contain more than forty entries noting that he has been diagnosed as suffering from depression.[2] Moreover, these were

[1] Tr. 79, 80, 87, 88, 93, 96, 97, 103, 106, 107, 389, 396, 398, 409, 410, 412, 425, 430, 437, 438, 440, 458, 463, 468, 470, 475, 478, 483, 484, 486, 490, 491, 493, 499, 505, 563, 564, 568, 570, 575, 577. Note some pages contain multiple entries.
[2] Tr. 389, 396, 398, 409, 412, 425, 430, 437, 440, 458, 470, 475, 478, 483, 486, 490, 493, 499, 505, 563, 568, 575, 577. Note some pages contain multiple entries.

longstanding medical diagnoses. In fact, Perkins had been diagnosed as suffering from both epilepsy and depression since at least 2017. (Tr. 505).

Furthermore, the treatment notes before the ALJ documented at least one serious episode of depression and seizures experienced by Perkins. In the Spring of 2024, Penn State Hershey Emergency Department notes reported that Perkins underwent resuscitation following an intentional overdose. Clinical reports indicated that at this time Perkins sent text messages to his wife stating that, "I do not want to wake up, I want to die" and he had taken an unspecified number of naproxen as well as gabapentin. During this emergency room encounter Perkins was found to be seizing and vomiting. (Tr. 568-569).

There is a third significant physical limitation that is documented throughout Perkins' clinical history which was also left unacknowledged by the ALJ in this decision denying benefits. The administrative record in this case contains more than twenty references to the fact that Perkins reported that he needed a cane to ambulate.[3] These reports came from numerous sources. For example, Perkins' spouse specifically stated that the plaintiff needed a cane to walk. (Tr. 343). Caregivers also documented Perkins' need for assistance ambulating. In November of 2023, an out-

---

[3] Tr. 80, 88, 92, 93, 96, 97, 102, 103, 106, 107, 343, 497, 534, 568. Note some pages contain multiple entries.

patient neurosurgery examination at Penn State Hershey Hospital by PA-C An Tran observed that: “He does use a cane for ambulation now. His gait is unsteady.” (Tr. 497). Additionally, in November of 2023, CRNP Stacey Bradney documented that: “He is walking with a cane today. He appears to be uncomfortable.” (Tr. 568). CRNP Bradney further reported that:

> Glenn disclosed was emotional and crying during work and that his employer recommended he seek immediate mental health treatment through the ED. Glenn disclosed past suicidal attempts via swallowing his medications and had thoughts of using his gun, out stated that he didn't want to leave a mess for his wife to come home to . . . .

(Tr. 571).

In April of 2024, yet another caregiver, Dr. Skylar Braga at UPMC examined Perkins following a seizure episode and stated that: “Patient was able to ambulate with a cane which he and his wife note are his baseline.” (Tr. 534). Finally, these repeated observations regarding Perkins use of a cane were directly reported to the ALJ by the state agency experts who disclosed these clinical entries, while noting that the record did not indicate that a cane had been prescribed by Perkins. (Tr. 80, 88, 92, 93, 96, 97, 102, 103, 106, 107).

It is against the backdrop of this clinical record which was replete with references to Perkins’ epilepsy, depression and use of a cane to ambulate that this case came to be heard by an ALJ.

**C. <u>The ALJ Hearing and Decision</u>**

A hearing was held on Perkins' disability application on February 24, 2025. (Tr. 35-69).[4] At the outset of the hearing, Perkins' newly appointed counsel discussed the need for additional time to procure medical records, but the ALJ elected to proceed with a hearing. (Tr. 35-42). Perkins and a Vocational Expert (VE) then testified at this hearing. (Tr. 43-69). In his testimony, Perkins told the ALJ that he needed a cane to walk. (Tr. 52). In response to questions from the ALJ, Perkins denied having a prescription for the cane but enigmatically testified that he had an "order to get one." (Id.)

The VE then testified responding to hypotheticals posed by the ALJ. (Tr. 63-69). Notably, none of these hypotheticals incorporated limitations due to Perkins' epilepsy, depression or use of a cane, although on cross examination by counsel the VE acknowledged that Perkins' use of a cane could erode his ability to work. (Tr. 68).

Following this hearing, on April 3, 2025, the ALJ issued a decision denying Perkins' application for benefits. (Tr. 14-25). Remarkably, this decision makes no

[4] This hearing was initially scheduled for September 2024, but was rescheduled at Perkins' request when the plaintiff, who was unrepresented, asked for the assistance of counsel. (Tr. 30-35).

reference to Parkins' depression, suicide attempt, epilepsy, or need for a cane. Instead, in that decision the ALJ first concluded that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2024, and had not engaged in substantial gainful activity since May 24, 2023, the alleged onset date. (Tr. 20). At Step 2 of the sequential analysis that governs Social Security cases, the ALJ found that Perkins had the following severe impairments: osteoarthritis of the bilateral knees and peripheral neuropathy. (Id.) The ALJ's entire Step 2 analysis consisted of the following single sentence: "The above medically determinable impairments significantly limit the ability to perform basic work activities as required by SSR 85-28." (Id.) The ALJ did not address, analyze or even acknowledge Perkins epilepsy or depression, which had manifested itself through a suicide attempt. (Id.) The ALJ's Step 3 analysis was also cursory, consisting of two sentences which did not consider Perkins' epilepsy, depression or use of a cane. (Id.)

Between Steps 3 and 4, the ALJ fashioned the following residual functional capacity ("RFC") for Perkins:

> After careful consideration of the entire record, the undersigned finds that the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except he can sit for 6 hours in an 8-hour workday. The claimant's standing or walking are limited to 4 hours each in an 8-hour workday. The claimant can occasionally climb ramps and stairs, and occasionally balance, stoop, kneel, crouch, and crawl. He cannot climb ladders,

> ropes, or scaffolds. The claimant is precluded from concentrated exposure to vibration, unprotected heights, and moving machine parts.

(Tr. 20-21). Once again, the ALJ's justification for this RFC, which included no emotional limitations, made no mention of Parkins' depression, suicide attempt, epilepsy or need for a cane. (Tr. 21-23).

Having made these findings, the ALJ concluded that Perkins could not return to his past work but could perform other jobs which existed in the national economy. (Tr. 23-25). The ALJ then determined that the plaintiff did not meet the stringent standard for disability set by the Act and denied this claim. (Id.)

This appeal followed. (Doc. 1). On appeal, Perkins contends, *inter alia*, that the ALJ erred in failing to address or even acknowledge the existence of his depression and epilepsy. After a review of the evidence, we agree that the ALJ's complete failure to acknowledge these well-documented and medically determinable impairments, leave the factual, legal and logical bridge between the evidence and the ALJ's findings lacking. Therefore, we will remand this case for further consideration by the Commissioner.

## III. Discussion

### A. Substantial Evidence Review – the Role of this Court

When reviewing the Commissioner's final decision denying a claimant's application for benefits, this Court's review is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record. See 42 U.S.C. §405(g); Johnson v. Comm'r of Soc. Sec., 529 F.3d 198, 200 (3d Cir. 2008); Ficca v. Astrue, 901 F. Supp.2d 533, 536 (M.D. Pa. 2012). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Pierce v. Underwood, 487 U.S. 552, 565 (1988). Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla. Richardson v. Perales, 402 U.S. 389, 401 (1971). A single piece of evidence is not substantial evidence if the ALJ ignores countervailing evidence or fails to resolve a conflict created by the evidence. Mason v. Shalala, 994 F.2d 1058, 1064 (3d Cir. 1993). But in an adequately developed factual record, substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence." Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966). "In determining if the Commissioner's decision is

supported by substantial evidence the court must scrutinize the record as a whole." Leslie v. Barnhart, 304 F. Supp.2d 623, 627 (M.D. Pa. 2003).

The Supreme Court has underscored for us the limited scope of our review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. T-Mobile South, LLC v. Roswell, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." Ibid.; see, e.g., Perales, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Consolidated Edison, 305 U.S. at 229, 59 S.Ct. 206. See Dickinson v. Zurko, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).

Biestek, 139 S. Ct. at 1154.

The question before this Court, therefore, is not whether the claimant is disabled, but rather whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. See Arnold v. Colvin, No. 3:12-CV-02417, 2014 WL 940205,

at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence") (alterations omitted); Burton v. Schweiker, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); see also Wright v. Sullivan, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); Ficca, 901 F. Supp.2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

Several fundamental legal propositions which flow from this deferential standard of review. First, when conducting this review "we are mindful that we must not substitute our own judgment for that of the fact finder." Zirnsak v. Colvin, 777 F.3d 607, 611 (3d Cir. 2014) (citing Rutherford v. Barnhart, 399 F.3d 546, 552 (3d Cir. 2005)). Thus, we are enjoined to refrain from trying to re-weigh the evidence. Rather our task is to simply determine whether substantial evidence supported the ALJ's findings. However, we must also ascertain whether the ALJ's decision meets the burden of articulation demanded by the courts to enable informed judicial review. Simply put, "this Court requires the ALJ to set forth the reasons for his decision." Burnett v. Comm'r of Soc. Sec. Admin., 220 F.3d 112, 119 (3d Cir. 2000). As the Court of Appeals has noted on this score:

> In Burnett, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable meaningful judicial review. Id. at 120; see Jones v. Barnhart, 364 F.3d 501, 505 & n. 3 (3d Cir.2004). The ALJ, of course, need not employ particular "magic" words: "Burnett does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." Jones, 364 F.3d at 505.

Diaz v. Comm'r of Soc. Sec., 577 F.3d 500, 504 (3d Cir. 2009).

Thus, in practice ours is a twofold task. We must evaluate the substance of the ALJ's decision under a deferential standard of review, but we must also give that decision careful scrutiny to ensure that the rationale for the ALJ's actions is sufficiently articulated to permit meaningful judicial review.

This principle applies with particular force to legal challenges, like the claim made here, based upon alleged inadequacies in the articulation of a claimant's mental RFC. In Hess v. Comm'r Soc. Sec., 931 F.3d 198, 212 (3d Cir. 2019), the United States Court of Appeals recently addressed the standards of articulation that apply in this setting. In Hess the court of appeals considered the question of whether an RFC which limited a claimant to simple tasks adequately addressed moderate limitations on concentration, persistence, and pace. In addressing the plaintiff's argument that the language used by the ALJ to describe the claimant's mental limitations was legally insufficient, the court of appeals rejected a *per se* rule which

would require the ALJ to adhere to a particular format in conducting this analysis. Instead, framing this issue as a question of adequate articulation of the ALJ's rationale, the court held that: "as long as the ALJ offers a 'valid explanation,' a 'simple tasks' limitation is permitted after a finding that a claimant has 'moderate' difficulties in 'concentration, persistence, or pace.' " Hess v. Comm'r Soc. Sec., 931 F.3d 198, 211 (3d Cir. 2019). On this score, the appellate court indicated that an ALJ offers a valid explanation a mental RFC when the ALJ highlights factors such as "mental status examinations and reports that revealed that [the claimant] could function effectively; opinion evidence showing that [the claimant] could do simple work; and [the claimant]'s activities of daily living, . . . ." Hess v. Comm'r Soc. Sec., 931 F.3d 198, 214 (3d Cir. 2019).

In our view, the teachings of the Hess decision are straightforward. In formulating a mental RFC the ALJ does not need to rely upon any particular form of words. Further, the adequacy of the mental RFC is not gauged in the abstract. Instead, the evaluation of a claimant's ability to undertake the mental demands of the workplace will be viewed in the factual context of the case, and a mental RFC is sufficient if it is supported by a valid explanation grounded in the evidence.

It follows from this basic legal proposition that a complete failure to discuss a mental impairment, like depression, is error, and is material error when the clinical record contains evidence of a suicide attempt.

**B. Initial Burdens of Proof, Persuasion, and Articulation for the ALJ**

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A); see also 20 C.F.R. §404.1505(a). To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy. 42 U.S.C. §423(d)(2)(A); 20 C.F.R. §404.1505(a). To receive benefits under Title II of the Social Security Act, a claimant must show that he or she contributed to the insurance program, is under retirement age, and became disabled prior to the date on which he or she was last insured. 42 U.S.C. §423(a); 20 C.F.R. §404.131(a).

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process. 20 C.F.R. §404.1520(a). Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in

substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC"). 20 C.F.R. §404.1520(a)(4).

Between Steps 3 and 4, the ALJ must also assess a claimant's residual functional capacity (RFC). RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)." Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); see also 20 C.F.R. §§404.1520(e), 404.1545(a)(1). In making this assessment, the ALJ considers all of the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis. 20 C.F.R. §404.1545(a)(2).

There is an undeniable medical aspect to an RFC determination, since that determination entails an assessment of what work the claimant can do given the physical limitations that the claimant experiences. Yet, when considering the role and necessity of medical opinion evidence in making this determination, courts have followed several different paths. Some courts emphasize the importance of medical opinion support for an RFC determination and have suggested that "[r]arely can a

decision be made regarding a claimant's residual functional capacity without an assessment from a physician regarding the functional abilities of the claimant." Biller v. Acting Comm'r of Soc. Sec., 962 F. Supp. 2d 761, 778–79 (W.D. Pa. 2013) (quoting Gormont v. Astrue, Civ. No. 11–2145, 2013 WL 791455 at *7 (M.D. Pa. Mar. 4, 2013)). In other instances, it has been held that: "There is no legal requirement that a physician have made the particular findings that an ALJ adopts in the course of determining an RFC." Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006). Further, courts have held in cases where there is no evidence of any credible medical opinion supporting a claimant's allegations of disability that "the proposition that an ALJ must always base his RFC on a medical opinion from a physician is misguided." Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015).

These seemingly discordant legal propositions can be reconciled by evaluation of the factual context of these decisions. Those cases which emphasize the importance of medical opinion support for an RFC assessment typically arise in the factual setting where a well-supported medical source has identified limitations that would support a disability claim, but an ALJ has rejected the medical opinion which supported a disability determination based upon a lay assessment of other evidence. Biller, 962 F.Supp.2d at 778–79. In this setting, these cases simply restate

the commonplace idea that medical opinions are entitled to careful consideration when making a disability determination, particularly when those opinions support a finding of disability. In contrast, when an ALJ is relying upon other evidence, such as contrasting clinical or opinion evidence or testimony regarding the claimant's activities of daily living, to fashion an RFC courts have adopted a more pragmatic view and have sustained the ALJ's exercise of independent judgment based upon all of the facts and evidence. See Titterington v. Barnhart, 174 F. App'x 6, 11 (3d Cir. 2006); Cummings v. Colvin, 129 F. Supp. 3d 209, 214–15 (W.D. Pa. 2015). In either event, once the ALJ has made this determination, our review of the ALJ's assessment of the plaintiff's RFC is deferential, and that RFC assessment will not be set aside if it is supported by substantial evidence. Burns v. Barnhart, 312 F.3d 113, 129 (3d Cir. 2002); see also Metzger v. Berryhill, No. 3:16-CV-1929, 2017 WL 1483328, at *5 (M.D. Pa. Mar. 29, 2017), report and recommendation adopted sub nom. Metzgar v. Colvin, No. 3:16-CV-1929, 2017 WL 1479426 (M.D. Pa. Apr. 21, 2017); Rathbun v. Berryhill, No. 3:17-CV-00301, 2018 WL 1514383, at *6 (M.D. Pa. Mar. 12, 2018), report and recommendation adopted, No. 3:17-CV-301, 2018 WL 1479366 (M.D. Pa. Mar. 27, 2018).

At Steps 1 through 4, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her in

engaging in any of his or her past relevant work. Mason, 994 F.2d at 1064. Once this burden has been met by the claimant, it shifts to the Commissioner at Step 5 to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC. 20 C.F.R. §404.1512(f); Mason, 994 F.2d at 1064.

**C. Step 2 Analysis**

Step 2 of this sequential analysis is often the first substantive benchmark an ALJ must address and is governed by familiar legal standards:

> With respect to this threshold showing of a severe impairment, the showing required by law has been aptly described in the following terms: "In order to meet the step two severity test, an impairment need only cause a slight abnormality that has no more than a minimal effect on the ability to do basic work activities. 20 C.F.R. §§ 404.1521, 416.921; S.S.R. 96–3p, 85–28. The Third Circuit Court of Appeals has held that the step two severity inquiry is a *'de minimus* screening device to dispose of groundless claims.' McCrea v. Comm. of Soc. Sec.,370 F.3d 357, 360 (3d Cir.2004); Newell v. Comm. of Soc. Sec., 347 F.3d 541, 546 (3d Cir.2003). 'Any doubt as to whether this showing has been made is to be resolved in favor of the applicant.' Id." Velazquez v. Astrue, No. 07–5343, 2008 WL 4589831, *3 (E.D.Pa., Oct.15, 2008). Thus, "[t]he claimant's burden at step two is 'not an exacting one.' McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 360 (3d Cir.2004). This step should be 'rarely utilized' to deny benefits. Id. at 361. Rather, ... [a]n individual should be denied benefits at step two only if the impairment he presents is a 'slight abnormality' that has 'no more than a minimal effect on [his] ability to work.' Id." Kinney v. Comm'r of Soc. Sec., 244 F. App'x 467, 469–70 (3d Cir.2007). Accordingly, "[d]ue to this limited function, the Commissioner's determination to deny an applicant's request for benefits at step two should be reviewed with

> close scrutiny." McCrea v. Commissioner of Social Sec., 370 F.3d 357, 360 (3d Cir.2004).

Dotzel v. Astrue, No. 1:12-CV-1281, 2014 WL 1612508, at *4 (M.D. Pa. Apr. 22, 2014). Furthermore,

> > [E]ven if an ALJ erroneously determines at step two that one impairment is not "severe," the ALJ's ultimate decision may still be based on substantial evidence if the ALJ considered the effects of that impairment at steps three through five. However, where it appears that the ALJ's error at step two also influenced the ALJ's RFC analysis, the reviewing court may remand the matter to the Commissioner for further consideration. See Nosse v. Astrue, No. 08–[CV–1173, 2009 WL 2986612, *10] (W.D.Pa. Sept.17, 2009).
>
> McClease v. Comm. of Soc. Sec., No. 8–CV–1673, 2009 WL 3497775, *10 (E.D. Pa. Oct. 28, 2009); see also Salles v. Comm. of Soc. Sec., 229 Fed. App'x 140, 145, n. 2 (3d Cir. 2007) (citing Rutherford v. Barnhart, 399 F.3d 546, 553 (3d Cir. 2005) ("Because the ALJ found in Salles's favor at Step Two, even if he had erroneously concluded that some of her impairments were non-severe, any error was harmless.").

Stouchko v. Comm'r of Soc. Sec., No. 1:12-CV-1318, 2014 WL 888513, at *10 (M.D. Pa. Mar. 6, 2014). Simply put, "because step two is to be rarely utilized as basis for the denial of benefits, [] its invocation is certain to raise a judicial eyebrow." McCrea v. Comm'r of Soc. Sec., 370 F.3d 357, 361 (3d Cir. 2004) (citing SSR 85–28, 1995 WL 56856, at *4 ('Great care should be exercised in applying the not severe impairment concept')).

There is a necessary corollary to this principle that applies in a case such as this where an ALJ completely ignores medically determinable impairments at Step 2 and engages in no evaluation of the severity of these impairments. In this setting the utter failure to address or even acknowledge medically determinable impairments at Step 2 or at any other point is error which cannot be discounted as harmless. Simply put, "[a] denial of benefits lacks a substantial evidentiary basis where the ALJ disregards the existence of a medically determinable impairment both at step two and in the formulation of the RFC." Hammond v. O'Malley, 735 F. Supp. 3d 567, 579 (E.D. Pa. 2024).

These legal benchmarks guide us in the instant case.

**D. This Case Will Be Remanded.**

The decision denying Perkins' application for disability benefits ignores his well-documented history of epilepsy and depression, as well as his suicide attempt. That decision also does not address a significant physical limitation in Perkins' case, his reported need to use a cane to ambulate.

This was error.

Indeed, this decision violates a fundamental tenet of Social Security practice. It is well-settled that an ALJ's decision must be accompanied by "a clear and satisfactory explication of the basis on which it rests," Cotter, 642 F.2d at 704, and

must "indicate in his decision which evidence he has rejected and which he is relying on as the basis for his finding." Schaudeck, 181 F.3d at 433.

That did not happen here. The ALJ's decision is absolutely silent with respect to multiple material facts including Perkins' suicide attempt, depression and epilepsy. Thus, the decision violates the basic command of the Commissioner's regulations that: "In determining whether . . . physical or mental impairment or impairments are of a sufficient medical severity that such impairment or impairments could be the basis of eligibility under the law, *we will consider the combined effect of all of your impairments without regard to whether any such impairment, if considered separately, would be of sufficient severity*." 20 C.F.R. § 404.1523 (c) (emphasis added). On these facts, we agree that "[a] denial of benefits lacks a substantial evidentiary basis where the ALJ disregards the existence of a medically determinable impairment both at step two and in the formulation of the RFC." Hammond, 735 F. Supp. 3d at 579.

While this error identified by plaintiff's counsel, standing alone, compels remand, there is yet another material fact that is ignored in this decision. Numerous sources reported that Perkins needed a cane to ambulate, (Tr. 80, 88, 92, 93, 96, 97, 102, 103, 106, 107, 343, 497, 534, 568), and at his disability hearing Perkins told the ALJ that he had received an "order to get one." (Tr. 52). The ALJ's complete failure

to address this physical limitation, given Perkins' report that he was ordered to get a cane, was error since case law and Social Security regulations both recognize that a claimant's need to use an assistive device to ambulate can dramatically and adversely affect the ability to perform work on a sustained basis.

Accordingly, in certain instances, the use of a cane to ambulate can be outcome determinative in a Social Security appeal. At the outset, in order to rely upon evidence regarding the use of a cane to sustain a disability claim, the assistive device must be medically necessary. Williams v. Colvin, No. 3:13-CV-2158, 2014 WL 4918469, at *10 (M.D. Pa. Sept. 30, 2014) (citing Howze v. Barnhart, 53 Fed.Appx. 218, 222 (3d Cir. 2002)). In this case, Perkins' testimony that he got an order for a cane, at a minimum raises an unresolved factual question concerning whether there had been a finding of medical necessity by some caregiver.

Further, if the claimant makes this threshold showing of medical necessity, then it is incumbent upon the ALJ to directly "address the evidence concerning Plaintiff's use of" the assistive device. Steward v. Comm'r of Soc. Sec., No. CIV.A 08-1741, 2009 WL 1783533, at *5 (W.D. Pa. June 23, 2009). Moreover, the failure to do so often requires a remand. Id. In short, where substantial evidence indicates that there is a medical need for a claimant to use a cane or assistive device, the failure to adequately address these issues constitutes a failure of articulation by the ALJ

warranting a remand. See e.g., Graver v. Colvin, No. 3:13CV1811, 2014 WL 1746976, at *5 (M.D. Pa. May 1, 2014); Butler v. Astrue, No. CIV.A. 11-376, 2012 WL 1252758, at *7 (W.D. Pa. Apr. 13, 2012). These principles which recognize the limiting effects of an assistive on employment apply with particular force in a case such as this when an ALJ crafts an RFC for a claimant that includes significant mobility requirements, without accounting for his need for a cane. See Dieter, 2020 WL 2839087, at *9. In such instances a remand is necessary.

Here, multiple reports from Perkins' family and three different caregivers identified his need for a cane to assist in ambulating and Perkins stated that he had received an order to obtain a cane. This evidence demanded some consideration by the ALJ before Perkins' disability claim was denied but it received none. This error also compels a remand.

Simply put, much more was needed here by way of explanation on the ALJ's part. Since the ALJ's burden of articulation is not met in the instant case, this matter will be remanded for further consideration by the Commissioner.Yet, while we find that these errors compel a remand in this case, nothing in this Memorandum Opinion should be deemed as expressing a judgment on what the ultimate outcome of any reassessment of this evidence should be. Instead, that judgment should remain to province of the ALJ.

## IV. Conclusion

For the foregoing reasons the plaintiff's request for a new administrative hearing will be GRANTED, the final decision of the Commissioner denying these claims will be vacated, and this case will be remanded to the Commissioner to conduct a new administrative hearing.

An appropriate order follows.

*S/ Martin C. Carlson*
Martin C. Carlson
United States Magistrate Judge

DATED: October 8th, 2026